# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 27, 2026

Lyle W. Cayce
Clerk

No. 25-10629
Summary Calendar

———————————

Jose Manuel Suria,

*Plaintiff—Appellant*,

*versus*

Jarrett B. Kunkel, *in his individual and official capacity, nurse, James V. Allred Unit*; Sergeant UFN Stewart, *in his individual and official capacity, Safe Prisons Program, James V. Allred Unit*; Warden Richard Wathen, *in his individual and official capacity, James V. Allred Unit*; Jeannette Linthicum, *Director of Medical Services, TDCJ*; Office of Inspector General, *TDCJ*; Sheriff of Wichita County; District Attorney of Wichita County; John/Jane Doe,

*Defendants—Appellees*.

———————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 7:23-CV-42

———————————

Before Haynes, Graves, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

———————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 25-10629

Jose Manuel Suria, Texas prisoner #01297062, appeals from the district court's dismissal of his 42 U.S.C. § 1983 complaint for failure to state a claim. We REVERSE in part, AFFIRM in part, and REMAND for further proceedings.

## I.     Background

Suria alleged that he was assigned to work in the kitchen with an inmate known as "Ross." In March 2021, Suria witnessed Ross engaging in sexual intercourse with a female prison officer. Despite Suria's assurance to Ross that he would not tell anyone what he had witnessed, Suria learned from another inmate that Ross was planning to have him attacked for having discovered the relationship. A few days later, Ross and three other inmates verbally confronted Suria regarding his discovery of the relationship. A prison official intervened and escorted Suria into an office with other prison officials. Suria communicated his safety concerns to the prison officials, and a meeting was then held with Sergeant Stewart. After Suria explained what had happened, Stewart, noting that nobody had yet touched Suria, declined to take any action. When Suria questioned that decision, Stewart angrily responded that he did not care what happened to "you Mexicans," and he ordered Suria out of his office. Later that day, Suria's job assignment was changed, such that he would no longer be working near Ross. Nevertheless, Suria alleged that the job change did not end the threat to his person from Ross and his associates who, like Suria, were general population inmates who could still access him in the walkways.

On April 8, 2021, during a period when his prison unit was severely understaffed, Suria was attacked by another inmate, who beat Suria with a heavy metal fan motor inside of a pillowcase and said: "That's what you get for telling on my homeboy!" Suria suffered head lacerations as well as fractures to his hands and fingers, resulting in severe pain. Shortly after the

2

No. 25-10629

attack, Nurse Jarrett Kunkel treated Suria for his injuries. Kunkel stitched Suria's head wounds and, using "super sticky adhesive tape," taped his three "severely twisted" broken fingers to makeshift splints, resulting in additional pain. Kunkel refused Suria's requests for pain medication and, as Suria puts it, maintained a "hostile and unsympathetic attitude" toward him during their interactions. That night, Suria suffered "intense, blinding pain in his hands." Suria was not given any pain medication until the following day, when he was escorted back to the infirmary and seen by Dr. Grace Francis, who gave him Ibuprofen. Dr. Francis "was shocked at the treatment" Suria had received, and ordered that Suria be transported to the hospital "ASAP." Suria was not taken to the hospital until April 29, 2021, and he underwent surgery on his hands four days after that—25 days after the assault. He alleged that the delay resulted in additional physical harm and unnecessary additional pain.

Suria brought claims against: Stewart, for failing to protect him from Ross and his associates; Richard Wathen, the prison warden, for failing to protect him by allowing unsafe conditions at the prison at the time of the attack; Kunkel, for deliberate indifference to his serious medical needs based on the treatment provided and his refusal to provide pain medication; and John/Jane Doe, the unknown prison official responsible for ensuring that inmates with serious medical needs are timely transported to a hospital or other medical facility for treatment, for failing to get him to the appropriate medical facility in a timely manner.[1]

---

[1] Suria also brought claims against the Medical Director, District Attorney, Sheriff, and Office of the Inspector General, which were all dismissed by the district court, as well as state-law tort claims against Kunkel, Wathen, and John/Jane Doe. On appeal, however, he challenges only the dismissal of his inadequate-medical-care claims against Kunkel and Doe and his failure-to-protect claims against Stewart and Wathen, so we do not address the others.

No. 25-10629

Before any defendants were served, the district court dismissed Suria's complaint with prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim. As to the claim against Stewart, the district court held that any risk of substantial harm from another inmate was addressed by assigning him to a different prison job away from Ross failing to address the fact that he was still with the others in other places. As for the claim against Wathen, the district court held that the claim was not plausibly alleged because Suria failed to allege personal actions by Wathen or causal connections between Wathen and the alleged harm. Regarding the claims against Kunkel and Doe, the district court held that broken fingers were not a serious medical need and, alternatively, that there was no evidence of intentional action intended or desired to cause Suria harm. Then, with respect to the delay in medical care, the district court found that there was no indication that the 25-day delay resulted in substantial harm to Suria. Suria appealed.

## II.    Jurisdiction & Standard of Review

The district court had jurisdiction over the federal claims under 28 U.S.C. §§ 1343 and 1331. We have jurisdiction under 28 U.S.C. § 1291 because Suria appeals the final judgment dismissing his claims with prejudice.

We review a dismissal for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) under the same de novo standard as a dismissal under Federal Rule of Civil Procedure 12(b)(6). *Black v. Warren*, 134 F.3d 732, 733–34 (5th Cir. 1998) (per curiam). A complaint fails to state a claim for which relief may be granted when it does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to

4

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). We "accept[] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff," *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation modified), and "we construe *pro se* pleadings liberally," *see Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017) (per curiam).

## III.     Discussion

Suria brought claims (A) against Stewart and Wathen for failing to protect him from assault and (B) against Kunkel and Doe for failing to provide constitutionally adequate medical care after the assault. At this early stage, Suria only needs to plausibly allege his claims. We address each claim in turn.

### A.     Failure to Protect

To start, Suria contends that the district court erred when concluding that he failed to state a claim for failure to protect against both Stewart and Wathen. We agree.

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates," *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted), including by "protect[ing] prisoners from violence at the hands of other prisoners," *id.* at 833 (citation omitted). To succeed on a failure-to-protect claim, a plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm" and that the official acted with "deliberate indifference" to the prisoner's safety. *Id.* at 834 (citation omitted). A prison official is deliberately indifferent if the official "(1) was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'; (2) subjectively 'dr[e]w the inference' that the risk existed; and (3) disregarded the risk." *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019) (alteration in original) (quoting

*Farmer*, 511 U.S. at 837). An official may disregard the risk of serious harm "by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

Suria's amended complaint alleges failure-to-protect claims against Stewart and Wathen for failing to take reasonable measures to protect him from violence at the hands of other inmates. We address the allegations against each.

### 1.     *Stewart*

We begin with Suria's allegations against Stewart. Suria alleges that Stewart refused to take measures to protect Suria or to abate the risk of harm posed by Ross and his associates. Suria contends that he reported the threat based on what he had observed, the warning he had received from Reyes about Ross planning to harm him, and the altercation with Ross and the other inmates regarding what he had seen. Suria also explained that, sometime thereafter, he was moved to a different job within the prison.

These allegations are sufficient to state a claim at this early point. Suria has plausibly alleged that he was "incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834, and that Stewart was aware of facts from which he could infer that there was a substantial risk of serious harm, *see Bell*, 938 F.3d at 676. Moreover, the fact that Suria was moved to a different job after reporting the threat suggests that this change was made by Stewart because he subjectively believed that there was a risk of harm to Suria posed by Ross and his associates. As to whether Stewart disregarded the risk by failing to take reasonable measures to abate it, although Suria was moved to a job away from Ross, the allegations in the amended complaint, viewed in the light most favorable to Suria, show that this was not a reasonable measure to abate the risk because general population inmates have access to each other in the walkways in the unit, and the unit was understaffed, meaning that violent encounters between inmates were

likely to go unobserved and uninterrupted. The district court therefore erred in concluding that Suria failed to plausibly state his claim against Stewart.

### 2.   *Wathen*

As for Suria's allegations against Wathen, Suria asserted that Wathen failed to take reasonable measures to protect Suria because he did not lock down the unit on April 8 despite it being understaffed.[2] Suria alleged that Wathen "had the authority to hire and fire correctional officers, extend the shifts of officers working to maintain appropriate staffing levels, and/or lock the unit down to restrict inmate movement," and that "[i]t is common practice for the warden to lock down the unit when" not adequately staffed. He included allegations about frequent violent incidents in the unit and alleged that Wathen "knew or should have known that the shortness of staff" on the day of Suria's assault "created an unsafe environment and posed a significant risk of injury to inmates vulnerable to assault, such as [Suria]." He further alleged that "[i]t is common knowledge that an understaffed prison unit poses a significant risk to the safety of inmates" and that "[p]rison officials at the unit are well aware of the significant violence and the need for protective measures" in the unit.

These allegations are likewise sufficient at this stage. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence," and a prison official may be found to have known of a substantial risk "from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. Here, Suria alleged that the danger posed by understaffing

---

[2] The district court analyzed this as a supervisor liability claim. Nevertheless, it is not apparent that Suria pleaded the claim in this manner—instead, it appears he alleged that Wathen personally violated his rights, not that he is responsible for a supervisee's violations.

the prison unit was obvious and thus he has plausibly alleged that Wathen, the prison official responsible for locking down the unit in the event of understaffing, knew of the risk and disregarded it by failing to either adequately staff the unit or lock the unit down until it could be adequately staffed. The district court therefore erred in concluding that Suria failed to state a plausible claim against Wathen.

### B.     Inadequate Medical Care

Next, Suria asserts that the district court erred when dismissing his claims against Kunkel and Doe for inadequate medical care. With respect to Suria's claim against Kunkel, we agree. But as for his claim against Doe, we disagree.

The Supreme Court has held that the Eighth Amendment's prohibition against cruel and unusual punishment "impos[es] a duty on prison officials to 'ensure that inmates receive adequate . . . medical care.'" *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (per curiam) (omission in original) (quoting *Farmer*, 511 U.S. at 832). This duty is violated when the official's "conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.'" *Id.* at 463 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). The inmate must show that he objectively was "exposed to a substantial risk of serious harm" and that prison officials "were actually aware of the risk, yet consciously disregarded it." *Lawson v. Dall. Cnty.*, 286 F.3d 257, 262 (5th Cir. 2002). Unsuccessful medical treatment, negligence, medical malpractice, decisions whether to provide additional treatment, or disagreement with medical care (absent exceptional circumstances) do not constitute deliberate indifference. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). The inmate must instead "show that the [prison] officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or

8

engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001) (citation modified).

In his amended complaint, Suria alleges claims for inadequate medical care against both Kunkel and Doe. We start with his claims against Kunkel and then turn to Doe.

### 1.    *Kunkel*

Suria's amended complaint alleges that Kunkel provided inadequate medical care in his (1) initial treatment of Suria's injuries and (2) refusal to provide Suria with pain medication. We address the sufficiency of each allegation in turn.

First, the initial treatment. Suria adequately alleged that he had a serious medical need. The district court, citing two factually distinguishable district court cases, held that broken fingers do not rise to the level of a serious medical need. This is not so. Suria's injuries were caused by a violent attack shortly before he was taken to receive treatment, which left him "bleeding profusely and in severe pain." He "complained that both of his hands were broken and he was in extreme pain," "bones in his hands were visibly pushing against the skin at multiple fracture sites," and that there was "severe swelling, visibly broken bones, displacement of multiple fingers, and obviously twisted fingers at unnatural angles." Suria's alleged injuries to his hands constituted a serious medical need.

Moreover, Suria plausibly alleged a claim for inadequate medical care based on Kunkel's initial treatment. As for the treatment he received, Suria was promptly treated by Kunkel after the assault. Nevertheless, Suria alleged that Kunkel made a "makeshift splint" with a broken tongue depressor fastened "with a super sticky adhesive tape," which forced his "fingers to be painfully stretched out and secured against the wooden tongue depressor,"

and that Kunkel "displayed a hostile and unsympathetic attitude towards [Suria] at all times." He asserted that he was told by Dr. Francis that Kunkel should have used "metal splints and an Ace wrapping," which were available and do not cause severe pain upon removal. Kunkel's use of super sticky adhesive tape instead resulted in "extreme, intense—almost unbearable—pain" when it had to be peeled from each of Suria's broken fingers. He also alleged that, when Dr. Francis examined his hands, she said that Suria "must have made [Kunkel] mad because he treated [Suria] like an animal." As is discussed further below, Kunkel also denied Suria any pain medication. Taken as true and viewed in the light most favorable to Suria, these allegations go beyond asserting mere negligence or disagreement about treatment; rather, they plausibly allege that Kunkel "intentionally treated him incorrectly" in a manner "that would clearly evince a wanton disregard for any serious medical needs." *Gobert*, 463 F.3d at 346 (citation omitted). Therefore, Suria has plausibly alleged a claim for inadequate medical care.

Second, the refusal to provide pain medication. Suria also plausibly alleged that Kunkel was deliberately indifferent to his serious medical needs, resulting in substantial harm to Suria, when he denied Suria pain medication. "The pain suffered during a delay in treatment can constitute a substantial harm and form the basis for an award of damages." *Alderson*, 848 F.3d at 422; *see also Easter*, 467 F.3d at 464–65 (holding that the plaintiff "clearly stated an Eighth Amendment violation with regard to the severe chest pain he suffered during the [several hours] Powell refused to treat him"). Here, Suria alleged that, despite his complaints of "extreme pain," and his severely swollen fingers with "visibly broken bones, displacement of multiple fingers, and obviously twisted fingers at unnatural angles," "Kunkel refused all requests by [Suria] for pain medication" when he treated Suria, and Suria did not receive any pain medication until he was taken to a doctor in the infirmary the next day. Following the denial of pain medication by Kunkel, Suria

alleged that he suffered "intense, blinding pain in his hands" that prevented him from sleeping. These allegations, together with the factual allegations regarding Kunkel's demeanor and intentional mistreatment of his injuries, state a plausible claim for deliberate indifference regarding the pain caused to Suria by depriving him of pain medication for his clearly injured hands.

### 2. *John/Jane Doe*

In his complaint, Suria alleged that Doe, the unidentified individual responsible for making sure that inmates with serious medical needs are transported to a hospital or medical facility, failed to ensure that he received surgery in a timely manner. "The mere delay of medical care can also constitute an Eighth Amendment violation but only if there has been deliberate indifference that results in substantial harm." *Easter*, 467 F.3d at 463 (citation modified). As to the claim against Doe, the district court concluded that "there [was] no evidence of deliberate indifference to [Suria] and no evidence that he had serious medical needs" or that the delay before his surgery "resulted in substantial harm." On the contrary, however, Suria did plausibly allege serious medical needs, as is discussed above. Further, as for substantial harm caused by the delay, he asserted that while he awaited surgery, he "was unable to sleep more than a few minutes at a time due to the intense pain in his hands" and he "suffered extraordinary emotional, mental, and physical pain due to his injuries . . . and due to [the] . . . delay before being transferred to a hospital for much needed surgery." It is therefore apparent that he suffered substantial harm.[3] *See, e.g.*, *Alderson*, 848 F.3d at

---

[3] Suria also alleged that the delay in surgery "allowed a callus to begin forming at each" fracture site, which "complicated the surgery" because they had to be cut away before the bones could be realigned, but he does not allege that this complication was responsible for any further harm. The allegations of callus formation are therefore not a sufficient basis for a claim of inadequate medical care. Nevertheless, as is discussed above,

422 ("The pain suffered during a delay in treatment can constitute a substantial harm and form the basis for an award of damages.").

Nevertheless, the district court correctly concluded that Suria did not adequately allege deliberate indifference. Suria included no allegations about what this unidentified individual did or did not know about him or his medical needs. He alleged only that Doe's failure to ensure that he received surgery in a timely manner "constituted a deliberate indifference to his serious medical needs." This conclusory statement is not supported by any factual allegations, and it is therefore insufficient to plausibly allege that Doe was deliberately indifferent to his serious medical need. *See Iqbal*, 556 U.S. at 678 (noting that a court need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements").

## IV.    Conclusion

For the reasons above, we REVERSE the district court's order as to Suria's claims against Kunkel, Stewart, and Wathen, AFFIRM the district court's order as to Suria's claims against John/Jane Doe, and REMAND for further proceedings consistent with this opinion.

───────────────────

his allegations regarding "unnecessary and prolonged pain and suffering" caused by the delay are sufficient to demonstrate a serious medical need.